Good morning again. Good morning, Kimberly Schimble Federal Defenders, on behalf of Ms. Ildefonso. This Court should reverse Ms. Ildefonso's conviction because of the prosecutorial misconduct in closing argument. But even if this Court does not reverse her conviction, it should remand to the District Court for a new sentencing hearing using the clear and convincing standard of proof to determine the appropriate amount of methamphetamine to be attributed to Ms. Ildefonso. I'll begin with the closing argument. It's critical that Ms. Ildefonso's defense to this case was focused on the requirement for there to be a meeting of the minds. Ms. Ildefonso admitted that she had accepted certain amounts of money and cars from the individual who was wanting her to import methamphetamine. But she said that she never intended to actually follow through on the importation. And so essentially she admitted to all of the facts that the government argued in closing argument constituted a committed crime. That's because the government did not make clear to the jury that they needed to also prove that there was a meeting of the minds, meaning that Ms. Ildefonso intended to help the conspiracy. I'm looking at the government's argument, the way that the AUSA started out, explaining the charged conspiracy. What does that mean? Conspiracy means an agreement. It's a meeting of the minds. It's very difficult to prove a conspiracy, to prove what's in someone's mind with direct evidence. So we tend to rely on circumstantial evidence. It goes on to talk about the circumstantial evidence. That seems like a pretty standard way to argue a conspiracy charge based on circumstantial evidence of what was in the defendant's mind. Yes, Your Honor. And that initial explanation of the law was certainly correct, as were the jury instructions. The concern is with this particular portion of the closing argument, which the government didn't address in its answering brief at all. And at this particular portion, the government stated that it was a committed crime based merely on Ms. Ildefonso's actions, and that she knew that those actions would benefit the conspiracy. But this Court has already found in the United States – When you say merely, was that language used merely on – No, Your Honor. Merely was my explanation of them listing the facts and saying that that was sufficient for the conviction, which it's not under Escobar de Bright. The problem was exacerbated by the district court overruling the objection which specifically said that this was a misstatement of the law. Did the AUSA say that the circumstances were sufficient to establish conspiracy, or did the AUSA argue that the circumstances constitute evidence of a conspiracy? Your Honor, I think the problematic phrase was, that is a committed crime. And so that's not the same thing as saying you could infer from this that there was a committed crime. They were saying all of that is a committed crime. But even if this Court were not to agree that this particular statement made in closing argument rises to the level of prosecutorial misconduct, this Court should remand for a new evidentiary hearing using the clear and convincing standard of proof to determine the amount and purity of the methamphetamine that's attributable to Ms. Ildefonso. And that's because this conclusion had a disproportionate impact on Ms. Ildefonso's sentence. Now, the government's argument is that this increase in sentence was based on the extent of a conspiracy, and therefore the preponderance standard was appropriate. But there's a predicate question that the Court answered, which was absent in Harrison-Philpott, the case where this idea that a conspiracy conviction can use the preponderance of the evidence standard. And that is the question of what is the extent of the conspiracy for Ms. Ildefonso. It's not at all clear in this case that this particular load was related to the conspiracy for which Ms. Ildefonso was convicted. She had actually been put to trial for both the importation of this load and the conspiracy, and she was not convicted for this particular load. So that means at least one juror did not think that this particular load was a part of the conspiracy. So the question that the Court was answering when determining the amount and purity of the methamphetamine attributable to Ms. Ildefonso was necessarily different than typical drug cases where we know which transactions were a part of the conspiracy and we're just determining the quantity involved in each of those transactions. Here there was a question as to whether this particular load was even a part of the conspiracy. And that's the question that actually had the disproportionate impact on Ms. Ildefonso's sentence, and that's the question that should have been answered using the clear and convincing standard of proof rather than the preponderance of the evidence standard. Now, importantly, the judge recognized that he may have come to a different decision if he had used, he said, beyond the reasonable doubt standard of proof. But in that, he's recognizing that there's a degree of uncertainty here and that this Court has previously recognized the difference in the standard of proof between preponderance and clear and convincing is significant. So there may be a different outcome here, and that's why this plain error requires reversal. If I could also highlight a few more factual differences between this case and United States v. Harrison-Philpott. Again, that's the case where this Court had first decided that quantity determinations for conspiracy convictions are on a different plane. In that case, the individual, Ms. Harrison, was actually given an enhancement for a leadership role as a part of the conspiracy. She admitted through testimony on the stand that Harrison was involved from the very beginning of the conspiracy. And so the question was really the amount that each of these transactions involved, but there wasn't any question that he was completely involved in every aspect of the conspiracy. The same cannot be said for Ms. Ildefonso, who contested, first she contested her involvement in the conspiracy at all. Now, certainly that question was decided by the jury, but she also contested whether she knew about this particular load, and that question was not decided by the jury, in fact, leaving some doubt about whether this load was a part of the conspiracy. So factually, it's a very different scenario than United States v. Harrison-Philpott. It's also different from the later case from 2002, United States v. Rosacker, which the government relies on to say that drug quantity determinations are very different. In Rosacker, the individual had a methamphetamine lab in a shed. There was no question that all of the chemicals in that shed were involved in the offense. He was the only person who was involved in the offense. Here we have a fundamental question about whether the load of methamphetamine was a part of Ms. Ildefonso's offense, and that is why it was not appropriate for the court to determine that that load was necessarily a part of her conspiracy. Now, to be fair, the judge had not said that he was looking at that particular load, but that's what the government has argued should be looked at, and that's what the government argues even now was proven beyond a reasonable doubt at trial. But on that issue or on plain error review? Yes, Your Honor. And that's because during the sentencing hearing, there was a back and forth between the defense attorney and the judge about what was the appropriate standard. It's clear that no one actually knew the law, and there was no consideration of these factors which are drawn from United States v. Jordan. So we are on plain error review here, but the factors under Jordan, when they're applied here, clearly fall in favor of Ms. Ildefonso. This had a dramatic effect on her sentencing range. It went from 78 to 97 months up to 235 to 293 months. That's a 10-level increase. It more than doubles the low end, and it actually puts the majority of the range outside of the statutory maximum for this offense. So all of those factors show that this should have been proven with clear and convincing evidence. I will save my remaining time for rebuttal. Good morning, Your Honors. May it please the Court. Emily Kiefer for the United States. The convictions here should be affirmed. First, throughout both its initial and rebuttal closing argument, before, during, and after the lone defense objection at issue here, the United States repeatedly acknowledged its burden to prove Ms. Ildefonso's intent. The United States closing arguments neither expressly nor implicitly endorsed the notion that Ildefonso's actions without the requisite intent were sufficient by themselves to constitute a crime. Starting at ER 246, as Your Honors have noted, the United States embraced its burden to prove a meeting of the minds. At ER 249, it likewise acknowledged its burden to show that Ms. Ildefonso joined this conspiracy, knowing full well its object and intending to help accomplish it. The facts that the United States marshaled before the lone objection at issue here were several that supported the defendant's intent. As an initial matter, the United States noticed that her lies and readily observable nervous behavior on the day of her arrest. Well, there's this statement that the defendant really relies on that's 250 line 21. All of that is a committed crime. What do you make of that? Your Honor, I believe that's a correct statement of the law and of the facts of this case. So the United States talks about its burden to prove Ms. Ildefonso's intent. Then the United States talks about the evidence that proves her intent. Only after talking about the evidence of her intent, including her lies, her nervousness, including the fact that she had asked her co-conspirator, Jorge, the type of drugs that she would be importing at ER 249, the United States argues to the jury, if she's not really intending to join this conspiracy, if she's just pretending, why does she even care what kind of drugs Jorge will eventually want her to import into the United States? Only after talking about its burden, marshaling the evidence that tends to show Ms. Ildefonso harbored the requisite intent, only then the United States starts to talk about Ms. Ildefonso's behavior before the day of her arrest. So before the day of her arrest, as the United States noted, she met with Jorge. She understood that Jorge wanted her to smuggle drugs, that Jorge would be giving her money and cars. She accepted the money and cars. So after having set forth the evidence that established her intent, then talking about Ms. Ildefonso's behavior, the United States then says, Ms. Ildefonso's behavior prior to her arrest constituted a committed crime. There was the mens rea, there was the actus reus, and the United States was talking about the evidence that established both of those elements. Only then did the United States state that that was a committed crime, and that was what drew an objection. And the United States then pivoted and went back to the intent, again, that Ms. Ildefonso displayed on the day of her arrest, specifically her nervousness. And as the prosecutor posed, if she's never intending to join the conspiracy, why is she lying? Why is she nervous? So throughout the closing arguments, and I would note for your honors that it is a rather short closing argument. It's eight pages long. From the beginning through to the end, from ER 246 to 253, the United States acknowledged its burden to prove Ms. Ildefonso's intent multiple times and marshaled both the circumstantial and direct evidence to show that she had committed that crime. And nothing was improper, either a misstatement of law or a fact, in any of the United States' closing argument. And likewise, in rebuttal closing, the United States expressly dealt with Ms. Ildefonso's and her theory of defense, which was that she had never intended to join the conspiracy. Specifically, the United States noted that that was an implausible theory of defense, that it would require the jury to believe that a sophisticated drug dealer would allow himself to get strung along. It would also require the jury to believe. The jury apparently didn't believe that this sophisticated drug carrier was committing a crime by carrying the drugs across the border. I'm sorry, Your Honor, I misunderstood the question. The other count. Yes. The jury didn't believe that this drug carrier was carrying drugs across the border. I agree that there must have been at least one juror who did not believe beyond a reasonable doubt that Ms. Ildefonso, on the day of her arrest, intended to import the drugs that were found in her car. However, as to the conspiracy count, based on the substantial evidence introduced, including her post-arrest statements, including her testimony at trial, it was established that Ms. Ildefonso joined a conspiracy with Jorge with the requisite intent, that she knew what the goal of the conspiracy was and that she intended to accomplish it. And that was what the United States laid out for the jury in its closing. It is really. I understand the law about what you're allowed to presume from conflicting verdicts, but it's rather remarkable that a jury could have decided that she was conspired to bring drugs across, but when she actually did it, she wasn't doing it. I understand Your Honor's concern. At least the concern is that you can't really guess what a jury might have done. I'm not saying there's anything improper about the instruction, but if there were, it would be hard to guess what this jury would have done in the absence of something improper. I disagree as to the conspiracy count, because I think that the evidence was very strong that Ms. Ildefonso's actions leading up to her arrest were both criminally oriented as to their action and as to the intent. But then when she actually did it, they weren't. Well, so I think it's important to look at Ildefonso's testimony. So Ildefonso testified that she felt pressured on the day of her arrest, and one of the points that the United States was making in its closing argument was that she harbored the requisite intent prior to her arrest. She was asking Jorge the kind of drugs she would be importing. In the United States' view, that indicated that she actually was joining the conspiracy, and the actions that she undertook prior to her arrest demonstrate that she was part of the conspiracy. So regardless of what she felt on the day of her arrest in terms of pressure, the United States submitted that there was adequate evidence. I don't want to take all your time on that issue. Talk a little bit about the second issue, and particularly the Jordan case that counsel mentioned. Yes, Your Honor. So this case is on plain error review on this particular issue. After Jordan was decided, this court has repeatedly affirmed that a preponderance of the evidence standard applies when determining drug quantities in the context of the extent of a conspiracy, and that has not only been reaffirmed in Rosacker, but also in United States v. Riley, which is cited in the defendant's opening brief, as well as United States v. Treadwell, which is cited in our answering brief. So this court repeatedly, post-Jordan and the six factors that Jordan analyzed, has stated and affirmed that preponderance of the evidence applies when making drug quantity determinations here, and there was adequate evidence, even under a clear and convincing standard, to support that the defendant here was responsible for the drugs in her car. So you can get there one of two routes. The defendant's responsible for the amount of drugs here if the amount of drugs was either reasonably foreseeable to the defendant or if the defendant actually knew that the drugs were in her car. So proceeding on the route of whether they were reasonably foreseeable, as the district court noted, this defendant, prior to her arrest, knew that she was getting involved with a drug smuggler who used cars to cross the border. Cars are large conveyances that have the ability to hold the sort of drugs, the drug quantity at issue here, and when coupled with the defendant's nervousness on the day of her arrest and the lies on the day of her arrest, the district court found that both the amount of drugs was reasonably foreseeable and that the defendant actually knew that the drugs were in her car. So under either route, whether it's preponderance of the evidence or clear and convincing evidence, the defendant was found to be responsible for the amount of drugs in the car on the day of her arrest. And the preponderance of the evidence standard is appropriate. Even if you were to take an independent look at the six Jordan factors, four of the six line up in favor of applying a preponderance of the evidence standard here. So we would submit that preponderance is appropriate. This Court has repeatedly so held. And even if it were not appropriate, the defendant has not shown any prejudice because clear and convincing evidence exists either to show that the amount was reasonably foreseeable or that she actually knew that the drugs were in her car. Thank you. Thank you. Your Honors, I have two brief points. First, as to your Honor's questioning about what this jury would have done if they hadn't had this improper argument, I think it's important to note the beginning of this argument on ER 250. The government stated that she never fully intended to join this conspiracy because she felt threatened. And so listening to this, this is part of the inappropriate argument. The government is basically trying to say that if the threats were the reason that she's saying she wasn't part of this conspiracy, they came too late. By not acknowledging that the meeting of the minds had to have occurred before the threats, the government is undermining Ms. Ildefonso's defense as to the conspiracy charge. And clearly they believed Ms. Ildefonso as to some of her testimony about these threats because they didn't convict her of the importation charge. One juror didn't believe that. At least one juror. We don't know how many, but at least one juror believed that. So that's why it's critical that this confusion about when the meeting of the minds had to have occurred, that was a critical part of Ms. Ildefonso's defense, and it undermined the government's burden of proof. As to the argument about the two ways that Ms. Ildefonso could have been held accountable for these drugs, that actually goes to the Jordan factor about undermining the government's burden of proof and the presumption of innocence. If the government wanted to hold Ms. Ildefonso accountable for these drugs under the theory that they were reasonably foreseeable to her as a member of the conspiracy, they could have requested a Pinkerton charge as part of the jury instructions. They did not do so. So allowing the government to use this type of argument at sentencing to hold her accountable for drugs that they weren't able to convict her of at trial would be inappropriate under the Jordan factors. Thank you, Your Honors. May I just ask you, what actual sentence did she receive? Seventy-two months. And what would she have received under your theory? Well, the beginning range would have had the low end of 78 months, and so we believe that the court would have still varied downwards based on her equities and her long history in the United States, her positive history of educating herself, working hard, and being supportive for her family. So because there was such a great variance from the range that was calculated, it's reasonable to conclude that there would still be a variance with the lower range. And, of course, miscalculating the guidelines is always an error that affects rights. She had started with a range of, was it somewhere in the neighborhood of 200 months? 235 was the low end, yes. And the judge went down to 72? Yes, Your Honor. But your argument is that the low end of your proposed guideline range would be 78, and so there would be a substantial downward variance from that. Yes, Your Honor. Thank you. Thank you, counsel. Thank you both very much. The case, as argued, will be submitted.
judges: Reinhardt, Nguyen, Settle